388 A.2d 748

**George E. HARRIS, IV and Margaret L. Harris, Appellees,**

v.

**John T. DAWSON, Jr. and Diane L. Dawson, Appellants.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided July 19, 1978.

464

Rice, Rice & Boop, Carl Rice, Sunbury, for appellants.

Frederick D. Kessler, Lewisburg, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

NIX, Justice.

Appellees (sellers) instituted an action in assumpsit for damages incurred by reason of an alleged breach of contract for sale of land by the appellants (buyers). The appellants filed preliminary objections in the nature of a demurrer to the complaint which was sustained by the court below. On appeal to the Superior Court the ruling of the Common Pleas Court was reversed with three judges of the Superior Court dissenting. We granted review.

Appellants entered into a purchase agreement with appellees for the sale of a tract of land in East Buffalo Township, Union County, Pennsylvania for a recited price of Sixty Thousand Dollars ($60,000). One Hundred Dollars ($100.00) of this amount was paid upon the signing of the agreement and Twenty-Nine Thousand, Nine Hundred Dollars ($29,900) payable in cash was to be made at the time of settlement. The remainder of the purchase price was to be satisfied by the conveyance of the buyers to the sellers of the title to a home owned by the buyers. The purchasers declined to complete the contract and refused the deed tendered to them at the time of closing. The sellers thereupon sold the property to a third party for Fifty-four Thousand Dollars ($54,000) and instituted the said law suit against appellants

for the difference between the contract price and the price obtained on resale.

The demurrer interposed by the defaulting appellants contended that the sellers precluded themselves from suing for the purchase price by reselling the property and are now limited to the retention of the One Hundred Dollars ($100.00) as liquidated damages pursuant to a provision of the original contract for sale. We agree with this contention and reverse the Order of the Superior Court and reinstate the Order of the Court of Common Pleas.

As a general rule the seller of land upon a breach by the buyer has the option of tendering a deed and suing for specific performance, or of instituting a suit in assumpsit for damages resulting from that breach. Where there has been a resale of the premises the measure of damages in a suit in assumpsit is ordinarily the difference between the price agreed to be paid by the purchaser and that obtained on the resale, *Paul v. Grimm*, 183 Pa. 326, 38 A. 1006 (1898). It is also not uncommon in contracts for sale of land for the parties to include a provision providing an additional alternative wherein the seller may rescind the contract of sale and keep the deposit money as liquidated damages. *Baney v. Killmore*, 1 Pa. 30 (1845).

The question involved in this law suit is the interpretation to be placed upon the default clause in the instrument under consideration. The contested provision provides:

"Should the buyer fail to make settlement as herein provided, and the said time is hereby agreed to be the essence of this agreement, sum or sums paid on account are to be retained by the seller either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect and in the latter case this contract shall become null and void and all copies to be returned to the seller for cancellation."

We share the view expressed by Judge Price in his dissenting opinion in this case and the lower court that the terms of

this clause are clear and unambiguous. The parties hereto have expressed a clear intention that in the event of a breach by the buyers, the sellers shall have the option of retaining the money paid by the buyers on account and to apply it toward the purchase price or to accept that sum as liquidated damages.

Under the first alternative the remedy would be, of course, in conjunction with the sellers' right to sue for the purchase price.[1] However, the sellers would then be obligated to convey the premises to the defaulting buyers upon their satisfaction of the judgment. In view of the sellers' decision to resell in this case they were thereby precluded from proceeding under the first option. The instant sellers now seek to ignore the agreement and proceed in assumpsit for damages. This course of action is precisely what the disputed clause was intended to avoid. The concept of agreeing at the outset to a contract upon the liquidation of damages in the event of a subsequent breach of the terms of that contract was designed to eliminate the cost and the uncertainty involved in seeking relief through litigation after the fact. In commenting upon this subject, a noted authority observed:

1. "The action at law in assumpsit for the purchase price is a familiar remedy available, under our blended system of law and equity, to the vendor of land as a substitute for a bill in equity for specific performance of the contract of sale. Indeed, by an application of the rule that equity will not act where there is an adequate remedy at law, a bill in equity whose object is simply to enforce payment of the purchase money will not be entertained: Kauffman's App., 55 Pa. 383; Dech's App., 57 Pa. 467; Smaltz's App., 99 Pa. 310; Dorff v. Schmunk, 197 Pa. 298, 47 A. 113. The same principles which govern the remedy in equity apply with equal force to the remedy at law. As we said in Black v. American International Corp., 264 Pa. 260, 264, 107 A. 737, 'An action for the purchase money of land is in legal effect a petition or bill for specific performance of the contract of purchase, and is governed by the same equitable principles.' To the same effect may be cited: Nicol v. Carr, 35 Pa. 381; Herzberg v. Irwin, 92 Pa. 48; Keily v. Saunders, 236 Pa. 593, 85 A. 9; Hoover v. Pontz, 271 Pa. 285, 114 A. 522; Coates v. Cotteral, 290 Pa. 237, 138 A. 756; McClenachan v. Malis, 310 Pa. 99, 164 A. 780."
(Heightsland Co. v. Swengel's Est. et al, 319 Pa. 298, 300, 179 A. 431, 432 (1935).

"In drafting the [liquidated damage] clause, care should be exercised not to make it mandatory on the vendor. Such a clause which provides that on failure of the buyer to settle as agreed, the payments on account are to be retained by the seller either on account of the purchase money or as liquidated damages, gives the seller no option as to retaining the money. He must do so. His only option is whether to treat it as damages or as payment on account. Hence if he resells, he thereby elects to treat it as liquidated damages, and he cannot recover his loss on the sale." (footnote omitted). (emphasis omitted). P. Nicholson Wood, Ladner on Conveyancing in Pennsylvania, § 5:09, at 98 (3rd Ed. 1961).

While, as pointed out in the above statement, the clause could have been drafted in such a manner as to allow liquidated damages to serve as a remedy in addition to a suit in assumpsit for damages. The language of the instant clause specifically provided otherwise. Here the parties agreed that upon the buyers breach, the "sum or sums paid on account are to be retained by the sellers." Clearly the phraseology intended that the only option to a seller who has elected to resell his property is the acceptance of the liquidated damage in lieu of any actual loss that may have occurred as a result of the resale. *See Tudesco et ux v. Wilson*, 163 Pa.Super. 352, 60 A.2d 388 (1948). The appellees offer a number of arguments suggesting the unfairness of the conclusion we herein reach and argue that it allows the breaching party to benefit from that breach. However, in response, we need only point out that the essence of contract law is the intent of the parties and where there has been no allegation of mistake, fraud, overreaching, or the like, it is not the function of the court to redraft the agreement more favorable to a given party than that which he chose to enter into.

The Order of the Superior Court is reversed and the Order of the Court of Common Pleas dismissing the complaint is reinstated.

PACKEL, J., did not participate in the decision of this case.

ROBERTS, J., files a dissenting opinion joined by EAGEN, C. J.

ROBERTS, Justice, dissenting.

I dissent. The original contract price of the land here in question was $60,000. When the original buyer refused to complete the contract and rejected the deed tendered at the time of closing, the seller sold the property to a third party for $54,000. The seller then instituted this action in assumpsit to recover the balance of the purchase price from the original, defaulting buyer.

I cannot agree with the majority that a provision in an agreement for sale of real estate allowing the seller to retain sums paid, here $100.00, "either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf" precludes this action by the seller to recover the balance of the agreed-to purchase price he was unable to obtain upon resale necessitated by the original buyer's breach. I find the seller's course of action entirely proper under the terms of the agreement for sale.

The seller, had he not sold the property to a third party, could have sued the buyer for the full purchase price of $60,000, transferring the deed to the buyer and crediting the buyer with the retained $100.00 down payment. See *Trachtenburg v. Sibarco Stations, Inc.*, 477 Pa. 517, 384 A.2d 1209 (1978). I agree with the opinion of Judge Van Der Voort of the Superior Court that it is equally clear that the seller likewise sues the buyer for the "purchase money" when he resells the property after default and then sues to recover the balance of the originally agreed upon purchase price. In this situation also, the damages awarded, if any, must be offset by the $100.00 retained by the seller.

It is clear, however, that whether the seller obtains his full purchase price after sale to the buyer or to a third party, crediting of the $100.00 is "on account of the purchase money." Indeed, in the seller's letter of October 1, 1973, to

the buyer, responding to the buyer's letter stating his intent to breach, the seller indicated that if the buyer did breach, causing sale to a third party, the $100.00 already paid by the buyer on account would "be credited toward the purchase price." This demonstrated an election by the seller to treat the $100.00 on "account of the purchase money" and not as "compensation for the damages and expenses he has been put to in this behalf."

To interpret the agreement for sale to prevent recovery of the full purchase money after resale leads to unfair and economically unreasonable results. Absent clear, precise and unequivocal language to that effect, this Court should be loathe to hold that, to recover the full purchase money, a selling homeowner must hold onto his house, sue the breaching buyer for specific performance, wait until completion of the suit, obtain a court order directing specific performance, and hope that the defaulting buyer will be financially able to comply with the court order. I cannot find the language "on account of the purchase money, or as compensation for damages and expenses [the seller] has been put to in this behalf" a plain, unambiguous and unequivocal indication that the parties intended to limit the seller's remedy either to an action for specific performance or retention of the down payment as liquidated damages. Where the parties elect not to use the commonly used precise terms "specific performance" and "liquidated damages," this Court should not reach out to limit the remedies available at common law to a nondefaulting party to a real estate sale as though those terms were used.

The modern trend in damage law requires that a person aggrieved by a breach of contract must try to mitigate damages. E. g., Restatement of the Law of Contracts, § 336(1) (requiring mitigation of reasonably foreseeable damages). An aggrieved seller should mitigate by resale. Uniform Commercial Code—Sales, 12A P.S. § 2–706 (Aggrieved seller who, after buyer's breach, resells goods in good faith and in a commercially reasonable manner may recover the difference between resale price and contract

price); see Restatement of the Law of Contracts, § 336(1), and comment a. Here, at the time the buyer notified the seller of the decision to breach, the seller, in reliance upon the buyer's agreement to buy the seller's home, had already contracted to purchase another residence. After notice to the buyer, the seller properly moved quickly to mitigate damages caused by the buyer's breach.

I therefore cannot agree with the majority that, under the terms of the written agreement, the seller was precluded from bringing this action to recover the full "purchase money." I would affirm the order of the Superior Court reversing the order of the trial court and reinstating the complaint for proceedings on the merits of the seller's action to recover the difference between resale price and contract price.

EAGEN, C. J., joins this dissenting opinion.