**In re Francis E. ROSWOG, Individually and t/a Mister Donut, Debtor.**

**Bankruptcy No. 1–84–00735.**

United States Bankruptcy Court, M.D. Pennsylvania.

April 30, 1985.

Robert D. Kodak, Harrisburg, Pa., for debtor.

Eric Brossman, Harrisburg, Pa., for moving party.

## MEMORANDUM GRANTING IN PART AND DENYING IN PART MOTION FOR RELIEF FROM AUTOMATIC STAY AND FOR INJUNCTIVE RELIEF

ROBERT J. WOODSIDE, Bankruptcy Judge.

This case concerns the Motion of Mr. Donut of America, Inc. for Relief from the automatic stay and for Injunctive Relief to allow it to proceed in state court to recover possession of a Mr. Donut Shop which the debtor has been operating as a franchise. A hearing on the motion was held on January 22, 1985. The parties have subsequently submitted briefs and the case is now ready for determination. The relevant facts in this case are not in dispute.

On December 6, 1974, Mr. and Mrs. Roswog entered into a "Franchise Agreement" and a "Sublease of Premises" for the operation, as franchisees, of a Mister Donut shop in Lemoyne, Pennsylvania.[1] Paragraph 2 of the Franchise Agreement provided that "[t]he term of Dealer's Franchise Agreement shall be through October 28, 1984." The sublease agreement similarly provided that its term "shall continue until October 28, 1984." Neither document made any provision for renewal of its term.

On November 6, 1974, Mister Donut sent Mr. and Mrs. Roswog the following letter:

Mr. and Mrs. Francis E. Roswog
Mister Donut Shop
910 Market Street
Lemoyne, PA
RE: Mister Donut Shop
910 Market Street
Lemoyne, PA

Dear Mr. and Mrs. Roswog:

Reference is made herein to the various documents executed by you regarding your operation of the subject shop, with particular reference to that certain Dealer's Franchise Agreement and that certain Sublease of Premises. As you are aware, these agreements expire October 28, 1984.

1. Mrs. Roswog has subsequently assigned her rights in these agreements to Mr. Roswog.

This is to advise you that you will have a right to extend your franchise upon the following conditions: Written notice, sent certified or registered mail of your desire to extend your franchise must be received by us at any time between November 1, 1983 and January 1, 1984. At the time of this notice, you must be current in any and all obligations then owed to us, including, without limitation, rent and franchise fees due under the Sublease of Premises and Dealer's Franchise Agreement, respectively. Following full compliance with the above conditions, you will sign the then-current Mister Donut Franchise Agreement and Sublease, the terms of which shall run through October 28, 1994. The rental due under said Sublease shall be determined at the time the option is exercised. There will be no initial franchise fee due at this time. Finally, it is to be understood that this right to extend your franchise is granted to you alone and shall not be assignable or transferable by you in any way, manner or form.

Please acknowledge your assent to the foregoing by signing the two enclosed copies of this letter, having your signatures witnessed, and then returning the two fully executed copies to us.

Very truly yours,

MISTER DONUT OF AMERICA, INC.

L.R. Gauthier

LRG:jbk

ACKNOWLEDGED AND ACCEPTED this ———— day of ————————, 1974.

———————————— ————————————
Witness Francis E. Roswog

———————————— ————————————
Witness Barbara A. Roswog

(Plaintiff's Ex. 3). Mr. and Mrs. Roswog signed the letter in the spaces provided and returned copies to Mr. Donut.

On March 7, 1984, Mr. Roswog wrote to Mr. Edward Shine, Director of Administration for Mister Donut, stating in part:

I am formally requesting renewal of my Mister Donut—Lemoyne franchise for another ten years, feeling confident that I have now met your requirements. The first half of the standard twenty year franchise being due to expire on October 28, 1984.

(Defendant's Ex. 1). By letter dated March 19, 1984 Mr. Frederick A. Huggins, Vice President of Mr. Donut advised Mr. Roswog that "Mister Donut is unwilling to extend your Dealer's Franchise Agreement and Sublease" on the grounds that Mr. Roswog failed to give notice between November 1, 1983 and January 1, 1984 and that he was not current in amounts owed to Mr. Donut. (Defendant's Exhibit 4). Mr. Huggins further requested that Mr. Roswog "make appropriate arrangements to vacate the leased premises on October 28, 1984 in accordance with the Sublease Agreement." (Defendant's Ex. 4). Mr. Roswog filed a petition in bankruptcy on October 26, 1984 and has not relinquished possession of the Mr. Donut Shop.

## DISCUSSION

The issue in this case is whether by his letter of March 7, 1984, Mr. Roswog has effectively renewed the Franchise and Sublease Agreements for another 10 year term.

In determining the nature and extent of the debtor's interest in the Donut Shop franchise, this court must look to relevant state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Intermet Realty Partnership*, 26 B.R. 383, 387 (Bankr.E.D.Pa.1983). In the present case, both the Franchise and Sublease Agreements unequivocally state that their terms expire on October 28, 1984. Neither agreement makes any provision for additional or renewed terms. If the debtor has any right to a renewed term, it must, therefore, stem from the terms of Mr. Donut's November 6, 1979 letter.

Mr. Roswog contends that this case is governed by *Music v. Klein*, 213 Pa.Super. 182, 245 A.2d 650 (1968) where the court found it unconscionable to hold a party to an additional 3 years and 8 months term under an automatic renewal provision

where the party delivered its notice of termination two days late and the other party was not prejudiced by the late notice. *See also Eastern Milk Producers v. Lehigh Valley Co-Op*, 568 F.Supp. 1205 (E.D.Pa. 1983). Clearly, *Music v. Klein* is distinguishable from the present case. Here, unlike the situation in *Music*, the debtor does not seek to be excused from the effect of an automatic renewal provision which would bind him for a lengthy and unwanted additional term. Instead, the debtor seeks to bind Mr. Donut to an additional 10 year term, against its will and in violation of the express terms of the contract, on the grounds that his late renewal notice allegedly did not prejudice the franchise corporation. The case of *Music v. Klein* simply does not apply to this situation.

 We agree instead with the position taken by Mr. Donut that the November 6, 1974 letter constituted an option contract which expired when it was not exercised by the specified deadline of January 1, 1984. It is well settled that time is of the essence in an option contract, *New Eastwick Corporation v. Philadelphia Builders*, 430 Pa. 46, 50, 241 A.2d 766, 769 (1968); *Western Savings Fund Society of Philadelphia v. SEPTA*, 285 Pa.Superior 187, 192, 427 A.2d 175 (1981). It is also clear that an option expires unless it is exercised in a timely manner. *In re Intermet Realty Partnership*, 26 B.R. 383, 388 (Bankr.E.D.Pa.1983); *Warner v. Bedell Co. of Pittsburgh*, 278 Pa. 576, 123 A. 490 (1924). Because the debtor did not attempt to renew the term of the Agreement until March 7, 1984, more than 2 months after the specified deadline of January 1, 1984, his attempt was ineffective and the Agreement expired on October 28, 1984.

The debtor's argument that time was not of the essence because nowhere did the Agreement so state is undermined by the clear language of the November 6, 1974 letter. This letter advised the debtor:

you will have a right to extend your franchise *upon the following conditions:* Written notice, sent certified or registered mail of your desire to extend your franchise must be received by us at any time between November 1, 1983 and January 1, 1984 ... Following *full compliance* with the above conditions, you will sign the then current Mister Donut Franchise Agreement and Sublease, the terms of which shall run through October 28, 1984.

(Plaintiff's Ex. 1) (emphasis added.) It is clear that the debtor's right to renew the term is expressly conditioned on his exercising the renewal option within the specified time period. We reject the debtor's argument that the above language merely indicates the manner in which renewal of the franchisor's should take place or that it is merely indicative of the franchise's intention that ample notice be given by the debtor of his intent to renew.

 Finally, this case does not warrant the invocation of this Court's equitable powers. Mr. Roswog testified that his failure to provide timely notice of renewal was due to "an oversight on my part," (N.T. 59–60). He has not alleged neither fraud or overreaching on the part of Mr. Donut. Similarly, he has not claimed that the company in any way misled, or prevented him from making a timely renewal. It has been held that:

Where there has been no allegation of mistake, fraud, overreaching or the like, it is not the function of the Court to redraft the agreement more favorable [sic] to a given party than that which he chose to enter into.

*Harris v. Dawson*, 479 Pa. 463, 468, 388 A.2d 748, 750 (1978). Similarly, equitable intervention is unwarranted where a party's failure to renew a contract on time is based on his own negligence. *Western Savings*, 285 Pa.Super. at 196, 427 A.2d at 180.

We have considered the debtor's remaining arguments and find them to be without merit. We find that the debtor's interest in the Mr. Donut franchise and sublease expired on October 28, 1984. Because we find that the renewal notice was ineffective because it was untimely, we do not reach the question of whether Mr. Roswog's at-

tempted renewal was also ineffective because he was not current in paying his obligations to Mr. Donut.

As we find that debtor has no rights in the franchise and no right to occupy the premises we grant the motion to lift the stay to allow Mr. Donut to pursue its state court remedies. Although Mr. Donut, Inc., in its motion, requests that we prohibit the debtor from making any further use of the premises pending the initiation of state court proceedings we find such extreme measures to be unnecessary at this time. Instead we will order that the terms of the 1974 Franchise Agreement and Sublease Agreement will remain in effect until such time as the debtor relinquishes or is required to relinquish possession of the premises.

An appropriate order will issue.