517 A.2d 906

George SCHREINER, Duane Senay, Michael Elias, Joseph Feltz and Joseph Edwards, Appellees,

v.

The CITY OF McKEESPORT, Lou Washowich, Mayor; Samuel R. Vidnovic, Nicholas J. Skezas, Gerald F. Boyle, Joseph P. Graziano, James Heatherington, Charles A. Sharbaugh and Carolyn O. Young, Members of Council, Appellants.

Supreme Court of Pennsylvania.

Submitted Sept. 17, 1986.

Decided Nov. 17, 1986.

John F. Cambest, Pittsburgh, for appellants.

Ronald P. Koerner, Pittsburgh, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

In this appeal we are presented with a simple question involving the application of basic principles of contract law in the interpretation of a collective bargaining agreement between the City of McKeesport ("City") and its police officers ("Police") covering the years 1978 through 1980. Both the trial court and a Superior Court panel concluded that the parties to that agreement intended to provide for a cost of living adjustment (COLA) for the year 1980 payable beginning in 1981. Because the clear and unambiguous language of the agreement provides for no such adjust-

ment, we must reverse the order of the Superior Court and vacate the money judgment entered in favor of the Police.

On December 29, 1977, the City and the Police executed a collective bargaining agreement for the years 1978, 1979 and 1980. The contractual provision at issue in the instant appeal, which provided for certain COLA benefits during the covered years, reads as follows:

4. The City shall grant a COST OF LIVING ADJUST-MENT (hereinafter called COLA) to each and every member of the McKeesport Police Department. The COLA shall be based on the ALL CITIES CONSUMER PRICE INDEX, 1967 = 100, (hereinafter called CPI) published by the United States Bureau of Labor Statistics.

The base or beginning CPI for purposes of computing the COLA shall be the CPI figure for the periods ending December 31, 1977 and December 31, 1978. For each 0.4 rise in the CPI from January 1, 1978, to December 31, 1978, a COLA of $0.01 (one cent) per hour will be paid in the year 1979 commencing January 1, 1979 and continuing per hour will be paid in the year 1979 commencing January 1, 1979 and continuing thereafter.

For each 0.4 rise in the CPI from January 1, 1979 to December 31, 1979, an additional COLA of $0.01 (one cent) per hour will be paid in the year 1980 commencing on January 1, 1980, and continuing thereafter.

The maximum rise in the CPI to be considered in any one year for computing the COLA will be 6 points.

The COLA's called for herein are payable on January 1, 1979, and January 1, 1980. Because the monthly CPI figures are not published until the next succeeding month for the month in question, any COLA due hereunder shall be retroactive to January 1, 1979, and January 1, 1980, when if it becomes necessary to wait beyond such dates for applicable figures needed to compute any COLA.

The COLA shall be an "add on" in addition to each Police Officer's base wage scale.

The COLA shall be payable only for hours actually worked, including overtime hours worked, but shall not

be part of the employee's wage base for the purpose of calculating any other contractual benefits.

Each year's COLA shall automatically be carried over into subsequent years and will in no way detract from any additional COLA or other wage increase.

No decrease in the CPI shall ever result in a decrease in the COLA already being received by each Police Officer, nor will it in any way detract from his base wage scale.

Should the CPI in its present form become unavailable, the parties shall attempt to adjust this Agreement and if agreement cannot be reached, shall request the Bureau of Labor Statistics to provide the appropriate substitution for the CPI, which shall be used to compute the COLA from the substitution date and thereafter.

R.R. 7a–8a.

Pursuant to this provision of the agreement, the Police received wage increases in 1979 and 1980 based on the Consumer Price Index (CPI) established by the federal Bureau of Labor Statistics for the previous year. This dispute arose when the City refused to pay the Police a COLA based on the 1980 CPI beginning in 1981, after the contract had expired. The police filed an action in mandamus in the Court of Common Pleas of Allegheny County alleging a mandatory duty on the part of the City under the agreement to pay such a wage increase. A non-jury trial was conducted during which the Police presented two members of the City's Police Department who were permitted to testify as to the intention of the parties with respect to the COLA provisions of the collective bargaining agreement. The trial court ruled in favor of the Police and, after dismissing the City's exceptions, entered a judgment in favor of the Police in the amount of Twenty Thousand Three Hundred Forty-Five Dollars ($20,345.00). The City appealed to the Superior Court, which affirmed on the opinion of the trial court. 345 Pa.Super. 630, 496 A.2d 860. This Court subsequently granted the City's petition for allowance of appeal.

As previously indicated, this case involves a straightforward question of contract interpretation. As this Court stated in *Harris v. Dawson*, 479 Pa. 463, 388 A.2d 748 (1978), "the essence of contract law is the intent of the parties and where there has been no allegation of mistake, fraud, overreaching, or the like, it is not the function of the court to redraft the agreement more favorable to a given party than that which he chose to enter into." *Id.*, 479 Pa. at 468, 388 A.2d at 750. It is firmly established that the intent of the parties to a written contract must be regarded as being embodied in the writing itself, and that when the words are clear and free of ambiguity that intent is to be ascertained only from the express language of the agreement. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982); *Estate of Breyer*, 475 Pa. 108, 379 A.2d 1305 (1977); *Felte v. White*, 451 Pa. 137, 302 A.2d 347 (1973); *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965); *Siciliano v. Misler*, 399 Pa. 406, 160 A.2d 422 (1960); *Kennedy v. Erkman*, 389 Pa. 651, 133 A.2d 550 (1957); *Atlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre,* 356 Pa. 226, 51 A.2d 719 (1947).

In the instant case the trial court conceded that "[i]n explaining the computation of the COLA's the contract specifically refers to their calculation for the years 1978 and 1979 without mention of any calculation for 1980 ..." and that the language of the contract "certainly, standing by itself, provides for only two COLA's," *i.e.* those payable beginning January 1, 1979, and January 1, 1980. *Schreiner v. City of McKeesport*, No. G.D. 81–34036 (C.C.P. Allegheny Co. August 8, 1984) slip op. at 1–2. Nevertheless the trial court attempted to find an ambiguity in the fact that the contract provided that any COLA due was to be retroactive to those respective dates in the event CPI figures were temporarily unavailable.[1] From that fact the court deduced

---

1. The trial court also appears to have relied to some extent upon language in the agreement that provides for COLA payments "commencing on January 1, 1979 and continuing thereafter" and a similar provision as to January 1, 1980. However, these phrases are easily

that the parties contemplated that COLA was to be paid in 1981 for the year 1980. That conclusion is untenable for several reasons.

First, as acknowledged by the trial court, the collective bargaining agreement by its own terms provides for COLA payments only in 1979 and 1980. We find no conceivable ambiguity in the language of the agreement which so states. Second, any contention that language elsewhere in the contract gives rise to a latent ambiguity, *see, e.g., Steuart v. McChesney, supra; Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332 (1957), would be without foundation. The words relied upon by the trial court merely recognize the possibility of delay in the publication of CPI figures and provide for a retroactive adjustment in the event that such a delay prevents the computation of the COLA on January 1, 1979 and/or January 1, 1980. To accept the trial court's interpretation it would be necessary to read into the contract a provision that COLA would be payable on January 1, 1981, based upon the CPI for the entire calendar year of 1980 when the agreement clearly covers the terms and conditions of employment only for the years 1978 through 1980. Such an interpretation is manifestly unreasonable and would amount to a judicial rewriting of the agreement. Obviously the parties could have provided for COLA in 1981 based on the increase in the cost of living in 1980; they simply did not do so and we decline to do it for them. Finally, the fact that the agreement is intended to cover all aspects of remuneration for a three-year period is of no avail to appellees' position. The contract provided for an across-the-board increase effective in 1978, to be followed by COLA increases in 1979 and 1980. The fact that the agreement does not

explainable when considered in their proper context. The agreement goes on to provide:

Each year's COLA shall automatically be carried over into subsequent years and will in no way detract from any additional COLA or other wage increase.

R.R. 8a.

Thus it is clear that "continuing thereafter" simply means that the increases, once given, are permanent.

provide for a COLA increase in 1981 is hardly incongruous when one considers that the agreement expired on December 31, 1980. A wage increase based on the 1980 CPI would clearly be a subject to be addressed in bargaining for a new agreement, just as the increased cost of living in 1977 must have been in the negotiations over the instant contract.[2]

For the foregoing reasons the Order of the Superior Court affirming the Judgment of the Court of Common Pleas is reversed and that Judgment is vacated.

ZAPPALA, J., did not participate in the consideration or decision of this case.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent and in support thereof adopt the opinion of the Court of Common Pleas of Allegheny County, No. G.D. 81-34036, authored by The Honorable Frederic G. Weir.

The following is Judge Weir's Opinion:

## OPINION

WEIR, Judge.

The policemen of the City of McKeesport sued their employer for cost of living benefits (COLA) based upon the Consumer Price Index (CPI) for the year 1980. In a non-jury trial I awarded $20,345.00 to the plaintiffs without interest to the date of the award, exercising the permissible discretion allowed the fact finder in respect to interest because of the well-known financial distress of the defendant which makes it difficult to award anything against it. The present matter is the disposition of exceptions to this award.

The parties had a three-year employment contract for the period from January 1, 1978 to December 31, 1980. It

---

**2.** In view of our decision we do not reach the City's contention that the trial court improperly admitted parol evidence.

covers all matters of remuneration including yearly increases of the base wages, overtime pay and the COLA's. It necessarily provides for retroactive pay of COLA's since the CPI is not known until the end of the year. The contract, although written by the plaintiffs, is the product of laymen, and while it is simple and clear for the most part, it has a degree of ambiguity in one respect.

In explaining the computation of the COLA's the contract specifically refers to their calculation for the years 1978 and 1979 without mention of any calculation for 1980, although the two sentences which cover this calculation conclude with the phrase "and continuing thereafter." Then following a sentence which limits consideration of the CPI to six points, it then goes on with a two-sentence paragraph which is ambiguous on its face. The first sentence is "The COLA's called for herein are payable on January 1, 1979 and January 1, 1980" which certainly, standing by itself, provides for only two COLA's as contended by the defendant. However, the second sentence reads "Because the monthly CPI figures are not published until the next succeeding month for the month in question, any COLA due hereunder shall be retroactive to January 1, 1979, and January 1, 1980, when and if it becomes necessary to wait beyond such dates for applicable figures needed to compute any COLA." This latter sentence is clearly to the effect that a COLA was contemplated for the year 1980.

As is stated in plaintiffs' brief, citing *Ludwig Honold Manufacturing Company v. Fletcher*, 404 [405] F.2d 1123, the paramount question in the legal construction of all contracts is a determination of the real intention of the parties. When, as here, you have a three-year contract covering all aspects of remuneration of employees, it is unlikely that it would be intended to cover cost of living adjustments for only two of the three years while covering everything else for three years. More importantly, however, the actual words of the contract when considered as a whole, as they must be, weigh considerably in favor of the plaintiffs' position.

Reference is made to alleged error in permitting testimony of plaintiffs' representatives in regard to the intention of the parties. This question of law need not be discussed because the decision of the Court at the time of the trial, and presently in dismissing the Exceptions, is based solely upon the contract itself.